## Case No. 16,508.

UNITED STATES v. THREE HUNDRED BALES OF WOOL.

[2 Int. Rev. Rec. 139.]

District Court, S. D. New York. 1865.

IMPORTATION OF GOODS—FORFEITURE FOR UNDER-VALUATION—CUSTOMHOUSE OATHS.

[1. The fact that the consignee, upon entering the goods, added 2 per cent. to the invoiced value thereof merely as a precaution against having the goods subjected to penal duties and forfeited, does not prejudice the question whether the shipper of the goods stated the value thereof correctly in the invoice.]

[2. The intent to pass the customhouse at less than the proper sum is necessary in order to warrant a condemnation of the goods for undervaluation.]

This case was brought to forfeit certain goods for undervaluation. It appeared on the trial that the goods arrived in April, 1863, on board the brig Veteran, from Matamoras. They were consigned to the firm of M. Echeverria & Co., and by them entered at the custom-house. The shipper of the goods was Joseph San Roman of Matamoras, and the affidavit taken before the American consul and attached to the invoice stated that the price in the invoice was the "true cost value" of the goods. The wool was invoiced at 6 cents a pound. On entering it here, the consignees advanced its price 2 cents a pound, to bring it up to the market value. On appraisal at the custom-house, the value was fixed at 10 cents a pound for a part, and 16 cents for the rest, in gold. A second appraisement was had, and the appraisement was confirmed. Upon this valuation the duty was laid. A penalty of 25 per cent. additional duty was also imposed and paid, and then the government seized the goods and brought this suit to forfeit them for an alleged fraudulent undervaluation.

The witnesses for the government, who were merchants here, testified that the appraisement was correct, and that the value of the article was as appraised. The govern-

ment also showed that on a previous entry of wool from Matamoras by the same claimants, in March, 1863, the invoice value was 6 cents a pound, and they added 4 cents to make market value. They also proved that several similar entries of wool had been made from December, 1862, to June, 1863, by different importers at from 8 to 18 cents a pound.

The defendants proved that the wool was shipped by San Roman not for himself, but as agent for Tomas Benavente, of Zacatecas. They gave testimony from Matamoras to show that there was, owing to the disturbed state of things there, no fixed market value for wool, but that the actual value at the time was according to the invoice. They also explained the addition to the entry by saying that there had been a good deal of trouble about invoices at the custom-houses, and they had raised this invoice because they thought it was safer to make the addition and pay an additional duty than to have any trouble; that they had raised this invoice only 2 cents because they thought they had added too much before, when they added 4 cents, and could not make out the market. All the witnesses joined in saying that there was no intention to defraud the revenue either in making the invoice or the entry.

Mr. Courtney and Mr. Allen, for the United States.

Mr. Wilcoxson, for claimants.

BENEDICT, District Judge (charging jury). In this case there are two charges made against the goods. One is that they were not estimated in the invoice and not entered at their cost in Matamoras; another is that they were not entered at their actual or market value in the principal markets of that country, and it is agreed here that Matamoras is the controlling market for that country. To make these charges good against this wool, it must appear that there was an entry of the goods on the invoice, that the invoice was incorrect, and that that inaccuracy or misstatement arose from an intent to pass these goods at a less rate of duty than the law requires.

This brings to you two questions: Were these goods on the evidence, purchased at Matamoras, by the consignee, or by this shipper?" And if so, is it a case of an attempt to pass the goods at less than their cost? The affidavit made respecting the cost of this wool you have heard read, and you have heard the statements of the parties who shipped it there as to who owned it, and whether it was purchased. You will have little difficulty in ascertaining whether or no on the facts this was an attempt to pass the goods, where the goods should be entered on their cost, as having been purchased. If it was a purchase of the goods, then their cost would have been proper enough. If it was not, then you come to the other branch of the case, which is, what was the true market value of the goods at Matamoras?

That brings you then to a simple question of fact in this case, and that is a question which you are to decide and no one else. I shall express to you no opinion whatever, and you will not seek in any words of mine for an intimation on this subject, but you will decide for yourselves from the evidence, this simple question of fact, whether or no these goods were entered at their real market value in Matamoras, at the time they were purchased. Now, the market value is got at in various ways. In this case, as in all such cases, it is got at by proving a train of similar importations of the same class of articles from the same market, it being properly enough inferred that if various merchants, in various ports of the country, or in one port, and in no way jointly connected, import from a certain city or seaport, at various times during the season, different shipments, by looking at that series of shipments information is obtained as to what was the value of the wool, or whatever the article may be, at the port of exportation. And so you have had before you in this case various importations and their values. You will look at them, at the article itself, at the period of time which elapsed, and from all the evidence draw your conclusions upon this point. Then you have, besides, the statements of witnesses produced before you. You have the opinions of the appraisers here, and of Mr. Coggill, the merchant appraiser. That has been commented on by counsel on both sides, and you will give it such weight as you may think it entitled to, bearing in mind that the question is, what was the value, the fair buying and selling price of wool of this class at Matamoras at that time. On the other hand you have had the testimony of Mr. De Babian and Mr. Tellkampf also before you, and you will remember what they have testified. One of them speaks of actual transactions in Matamoras, and you will consider that as having such weight as a sensible man should give to a statement of what was witnessed of the actual transactions in a place, as against the opinions of another person largely engaged in the trade. In addition, you have the depositions of Joseph San Roman and Fulgencio San Roman and Mr. Thomas, they being persons in Matamoras. You will look at their means of information —you will look at what they said, at the fullness of their statements, at their probable bias in this case, at their probable likelihood to tell the whole truth; and taking all this evidence together, form your opinions as to whether or no the price at which this wool was entered was the actual fair buying and selling price of the wool of this class at this time in Matamoras. If you are satisfied that the invoice, as originally made up, stated the fair value of the wool, then that is the end of the case. If you are not (and as to that point you are judges, and not I), then you

must go further, because the goods were not all entered here at the price in the invoice. The law allows an importer to raise the invoice price; and if this is done, and the raised invoice be the true, actual market value at the place of exportation, then that satisfies the law. And so you will be brought perhaps to go on further and say, not whether 6 cents, but whether 8 cents was the market value. I am asked to charge you and can charge you that if you believe that the consignee in entering the goods added 2 cents to the invoiced value of the wool, not because he thought the invoice was not high enough, but as a precaution against having the goods subjected to penal duties and charges of forfeiture by the government appraisers, his acts do not prejudice the question whether the shipper of the goods in stating the value as he did in the invoice, stated it correctly. If you find upon this evidence, that 8 cents a pound was not high enough, that these goods, when they attempted to pass the custom-house at 8 cents, were passed at a lower rate than the real fair market buying and selling price of such an article as this at Matamoras, then you must go further still, and satisfy yourself whether that arose from an honest mistake on the part of the claimant. That might happen. But the intent to pass the custom-house at less than the proper sum is necessary, in order to warrant a condemnation. Now, accidents may happen, and every one can imagine cases where such a thing might transpire as that goods were undervalued in the papers by mistake. Whether this is a bona fide case of a mistake, in not having found out what this wool was worth, or whether or no this was an after-thought, produced here to save the goods from forfeiture, is a question for you. But if you do not find, upon the evidence before you, that this case is free from an intent of that kind, and the goods were undervalued, then you must condemn the goods. If you find it was free, although it may have been an undervaluation at 8 cents, then you must acquit them.

I am asked, on behalf of the claimant, to charge you that errors in the forms of the custom-house oaths and entries can have no bearing on the case, unless the jury believe that they are evidence of a fraudulent design. I do not charge you in those words upon that point. The errors in the custom-house affidavits in this case are material, as showing the design with which this invoice was made up, and you have not the right to state that a custom-house oath is no oath. An oath made in proceedings under the custom-house law, and at the custom-house is an oath taken, and it is supposed to be as in law and in truth as solemn an oath as is taken anywhere. I shall never charge you or any other jury that a custom-house oath is a mere formality, but I charge in this case that you are to look to the facts and see

what kind of oaths have been made in the case. If you find that oaths have been made here contrary to the facts, and that the party knew at the time he made the oath that it was contrary to the facts, then that has great weight in determining the amount of credibility that should be given to this man's statements made in his deposition or in any other statement of his.

The district attorney requested the court to charge that the affidavit of the clerk attached to the invoice being unexplained, was prima facie evidence of fraud.

THE COURT said that if the jury found that the statement of that affidavit was not the fact, they had the right to take into consideration the fact that a false affidavit was made with reference to the shipment of these goods as a circumstance showing the intent with which the invoice was made up.

Counsel for defense stated that the young man was a Spaniard, and the affidavit was drawn up by the American consul, and he in doing so inserted the word "cost," and the young man used it in the sense of "value."

THE COURT said that was an explanation which the jury could accept or not.

The jury found a verdict for the United States, condemning the goods, which were valued at about $25,000.